**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICRO IMAGE TECHNOLOGIES, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**OLYMPUS CORPORATION OF THE AMERICAS**, *et al.,*<br><br>Defendants. | Civil Action No. 20-18781 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

     **THIS MATTER** comes before the Court upon a Motion to Dismiss ("Motion," ECF No. 13) filed by Defendants Olympus Corporation of the Americas and Morgan Sandell (collectively, the "Defendants").  In support of their Motion, Defendants filed a Moving Brief.  ("Moving Br.", ECF No. 13-1.)  Plaintiff Micro Image Technologies, Inc. ("Plaintiff") filed a brief in Opposition to Defendants' Motion ("Opp'n," ECF No. 14) to which Defendants replied ("Reply," ECF No. 15).

     The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY Defendants' Motion with respect to Count I and GRANT Defendants' Motion with respect to Counts II and IV.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff initiated this action on December 11, 2020, and Defendants originally moved to dismiss that Complaint on February 19, 2021.   Plaintiff responded by filing an Amended Complaint on March 12, 2021.   ("Am. Compl.", ECF No. 9.)   The Amended Complaint alleges that Plaintiff is a distributor of medical devices that also provides the sales and installation of medical equipment through its sales/service representatives.   (*Id.* ¶¶ 7,9.)   Plaintiff's "flagship product line, which represents a substantial portion of its revenue, is Carl Zeiss Surgical Microscopes. This is a very specialized segmented niche market" with only two main competitors; one of which is Defendant Olympus Corporation of the Americas ("Olympus").   (*Id.* ¶¶ 11–12.) Olympus manufactures, distributes, and markets for sale, among other things, an exoscope for use in the surgical theater known as the ORBEYE which directly competes with the Carl Zeiss product known as the KINEVO exoscope.   Plaintiff depends on sales representatives to sell and market its goods.   (*Id.* ¶ 17.)   Co-Defendant Morgan Sandell ("Sandell") was one of the sales representatives that Plaintiff employed.   (*Id.* ¶ 18.)   "The Sales Representatives, including Sandell, attended regular business meetings to confer and strategize on topics including customer identification, sales strategies, business plans, and related topics."   (*Id.*)   "Each sales representative is and was aware of and familiar with the identity of existing and potential customers, contacts and leads not only for his or her own Geography, but the Geography of all other Sales Representatives as well."   (*Id.*) As a result of the nature of these products and the niche market to which they belong, it is a small, closed universe of customers and potential customers, all of whom the Sales Representatives know. (*Id.* ¶ 24.)

Sandell was hired by Plaintiff in 2009 as a sales representative and executed an employment agreement dated October 1, 2013.   (*Id.* ¶¶ 27–28.)   Sandell executed a Confidentiality

and Noncompetition Agreement dated October 1, 2014 (the "Noncompetition Agreement"). (*Id.* ¶ 29.) In his role, Sandell had access to confidential and proprietary information about Plaintiff's business, its products, customers, marketing, sales strategies, and business plans throughout the entire geography. (*Id.* ¶ 31.) The nonsolicitation and noncompetition provisions of Sandell's Noncompetition Agreement were limited to the sales region to which he was assigned, namely, Eastern Massachusetts and Rhode Island. (*Id.* ¶¶ 34–35.) Specifically, these clauses barred Sandell from participating in any capacity that would be in competition to Plaintiff in all geographic areas covered by Plaintiff in the 18 months prior to the date of termination, for 18 months following his termination. (*Id.* ¶ 41.) In October 2020, Sandell resigned from Plaintiff's business and started working for Defendant-competitor Olympus. (*Id.* ¶¶ 45–47.) Sandell's territory in his new position at Defendant Corporation includes Maine, Vermont, New Hampshire, Massachusetts, Connecticut, and Rhode Island with the exception of some parts in Eastern Massachusetts, Rhode Island, New York, and New Jersey. (*Id.* ¶ 49.) The Olympus territory currently occupied by Sandell overlaps a territory in which Plaintiff sells its products and includes a portion of the initial territory in which Sandell marketed and sold products on behalf of Plaintiff, which puts him in breach of the Noncompetition Agreement. (*Id.* ¶¶ 50–51.) As a result, Plaintiff is claiming that Sandell's actions breached the Noncompetition Agreement (Count I) and further tortiously interfered with the parties' contract (Count II) and Plaintiff's prospective economic advantage (misnumbered as Count IV).[1] (*Id.* at 55–69.)

Defendants initially filed an Opposition to the Amended Complaint on March 22, 2021, and thereafter filed a Motion to Dismiss the Amended Complaint on April 26, 2021. In its Moving Brief, Defendants argue that the Amended Complaint fails to state facts necessary to plausibly

---

[1] As Defendants point out (Opp. Br. at 1 n.1), the Amended Complaint only contains three counts, misnumbered as Counts I, II, and IV.

state a claim.  (Moving Br. at 1.)  Specifically, with respect to Plaintiff's claims that Sandell breached the Noncompetition Agreement, the Amended Complaint fails to allege or describe how Sandell's alleged conduct has caused it damages of any kind or any instances where Sandell solicited its customers.  (*Id.* at 2.)  Plaintiff only makes conclusory allegations that Defendants "acted with malice and with intent to interfere" with Sandell's contract and Plaintiff's unspecified "economic relationships with its customers, manufacturers, and vendors."  (*Id.*)  Lastly, Plaintiff's tortious interference claims fail because Plaintiff merely recites the elements of those claims without any supporting facts or evidence of malice.  (*Id.* at 12.)

Plaintiff filed its Brief in Opposition to Defendants' Motion to Dismiss.  (ECF No. 24.)  In its Opposition Brief, Plaintiff argues that Defendants' admission that it hired Sandell to sell a competing product in a similar region is enough to state a plausible claim and overcome a Rule 12(b)(6) challenge.  (Opp'n at 1.)  Moreover, Plaintiff contends that it does not need to plead a precise amount of damages at this early stage of litigation to sufficiently allege damages.  (*Id.* at 8.)  Rather, Defendant Corporation "employing Sandell to sell a product that directly competes with the same product Sandell sold on behalf of Plaintiff, in the same Geography where Sandell worked for Plaintiff . . . causes Sandell to breach his Noncompetition Agreement. . . *per se*, causes [Plaintiff] damages."  (*Id.*)  Plaintiff maintains it has also sufficiently pled that Defendants acted with malice with respect to the tortious interference claim because surely Defendants knew that Sandell was previously employed at a competitor corporation selling a comparable product.  (*Id.* at 10.)  Plaintiff has also sufficiently alleged prospective economic advantage and a reasonable probability of receiving an economic benefit because Plaintiff has a legitimate interest in protecting its trade secrets, confidential business information, and customer relationships.  (*Id.* at 11.)  "It is those customer relationships, and sales to those customers, that [Plaintiff] sought to protect by

entering into the post-employment restrictive covenants in the Noncompetition Agreement with Sandell." (*Id.* at 12.) Thus, Sandell's breach of that Noncompetition Agreement to sell a competing product for one of its only competitors in the area is sufficient to allege prospective economic advantage and a reasonable probability of receiving an economic benefit. (*Id.*)

Defendants' Reply reiterates that Plaintiff has not alleged an injury that has caused them damages. (Reply at 2.) Defendants also argue that Plaintiff's tortious interference claims fail because they do not allege any malice or any interference with prospective economic advantage. (Reply at 8, 12.)

## II.   <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Following these basic dictates, the Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion

to dismiss." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. *Id.*; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555)).

Notwithstanding these dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. *Spence v. Brownsville Area Sch. Dist.*, Civ. No. 08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. *Phillips*, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinkerton v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

III.  **DISCUSSION**

A.  **BREACH OF NONCOMPETITION AGREEMENT**

Defendants argue that Plaintiff has not sufficiently alleged a breach of the Noncompetition Agreement because it has pled no resulting damages. (Moving Br. 3.) "To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence

6

of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)).  To prove the existence of a valid contract between the parties, the plaintiff must show: "mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization." *Cohn v. Fisher*, 287 A.2d 222, 224 (N.J. App. Div. 1972).

The New Jersey Supreme Court has held that "the general rule is that whenever there is a breach of contract, or an invasion of a legal right, the law ordinarily infers that damage ensued, and, in the absence of actual damages, the law vindicates the right by awarding nominal damages." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 45–46 (1984).  The New Jersey Supreme Court has distinguished a claim for breach of contract—a cause of action that does not require proof of actual damages—from the tort of negligence, which requires showing both "a breach of duty and resulting damage to prevail." *Id.*  Applying New Jersey law, courts in this district have allowed breach of contract claims to proceed despite proof of actual damages. *Zacks v. NetJets Inc.*, Civ. No. 11-2537, 2011 WL 4387147, at *3 (D.N.J. Sept. 20, 2011) ("Although it appears that Plaintiff has not suffered any actual damages as a result of the salary reduction, this is not fatal to his claim"); *Allia v. Target Corp.*, Civ. No. 07-4130, 2010 WL 1050043, at *14 (D.N.J. Mar. 17, 2010) ("Target need only prove a breach of the contract, and not actual damages."); *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, Civ. No. 06-4449, 2009 WL 4895262, at *3 (D.N.J. Dec. 11, 2009) ("For defendants' breach of the confidentiality agreement claim, defendants need only prove a breach of the contract, and no actual damages."); *see also City of Trenton v. Cannon Cochran Mgmt. Servs., Inc.*, A-5576-09T1, 2011 WL 3241579, at *4 (N.J.

Super. Ct. App. Div. Aug. 1, 2011) ("[L]iability for breach of contract does not require proof of damage beyond the breach itself.").

Here, the Amended Complaint alleges—and for the purposes of this motion Defendants do not dispute[2]—that the parties entered into a valid Noncompetition Agreement.  The Amended Complaint has also specified the term of the Noncompetition Agreement that was breached because Sandell left Plaintiff Corporation to work for a competitor in the same geographic area to sell a competing product within 18 months of his departure.  With respect to damages, the Complaint's allegations could have been more precise, but given that damages are indeed inferred in a breach of contract action, it is nevertheless sufficient at the motion to dismiss stage for Plaintiff to allege, as it does, that Sandell left Plaintiff to work for a direct competitor, that sells a product which both sides admit are in competition with one another, in the same region in which Sandell originally sold Plaintiff's product.  *Petri v. Drive N.J. Ins. Co.*, Civ. No. 21-20510, 2022 WL 4483437, at *5 (D.N.J. Sep. 26, 2022) (holding that the plaintiff's allegation that "the ACV for their vehicles was greater than the amount Defendants paid" was enough specificity as to damages to overcome a motion to dismiss).  Thus, accepting the facts of the Amended Complaint as true, the Court finds that it sufficiently states a plausible claim for breach of the Noncompetition Agreement.

### B.    TORTIOUS INTERFERENCE WITH CONTRACT

To establish a claim for tortious interference with contractual relations, a plaintiff must prove: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage. *214 Corp. v. Casino Reinvestment Dev. Auth.*, 280

---

[2] *See* Opp. Br. at 5 n.2.  Defendants do, however, reserve their rights to later challenge the validity of the Noncompetition Agreement and the Employment Agreement.  *Id*.

N.J. Super. 624, 628 (Law Div. 1994) (citing *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751–52 (1989)).

Interference with a contract is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) Torts, § 766A, cmt. e (Am. L. Inst. 1977). "An individual acts with malice when he or she intentionally commits a wrong without excuse or justification." *Cox v. Simon*, 278 N.J. Super. 419, 433 (App. Div. 1995). However, the fact that a breaching party acted "to advance [its] own interest and financial position" does not establish the necessary malice or wrongful conduct. *Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 141 N.J. Super. 437, 451–452 (App. Div.), *cert. denied*, 71 N.J. 503 (1976). A claim for tortious interference with the performance of a contract must be based, in part, on facts claiming that the interference was done intentionally and with malice. *Printing Mart-Morristown*, 116 N.J. at 751. "For purposes of this tort, [t]he term malice is not used in the literal sense requiring ill will toward plaintiff. Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Id.*

The Amended Complaint in this case alleges that "[b]y hiring Mr. Sandell, Olympus acted with malice and with intent to interfere with the post-employment restrictive covenants contained in Mr. Sandell's Noncompetition Agreement." (Am. Compl. ¶ 61.) The mere inducement of an employee to move to a competitor is, however, not in and of itself actionable when the employee is terminable at will. *Avtec Indus., Inc. v. Sony Corp. of Am.*, 205 N.J. Super. 189, 194 (App. Div. 1985). Insofar as Plaintiff's employees are at-will employees and free to depart whenever they choose, the alleged interference is generally construed as tortious interference with a prospective economic relationship rather than tortious interference with contract. *Nostrame v. Santiago*, 213 N.J. 109, 121 (2013). Still, the inducement is actionable if the party offering the inducement either

9

has an unlawful or improper purpose or uses unlawful or improper means. *Avtec*, 205 N.J. Super. at 194. In *Nostrame*, the new Jersey Supreme Court identified various types of conduct that have been deemed improper or wrongful. 213 N.J. at 124. Improper and wrongful means include conduct that amounts to fraud, defamation, deceit, misrepresentation, violence, intimidation, criminal or civil threats, or other violations of the law. *Id.* Even construed liberally, the Amended Complaint does not allege any of these improper means. Furthermore, its claim for interference with contract is nothing more than a recitation of the elements that baldly accuses Olympus of the violation simply by hiring Sandell. These accusations alone are not enough to sufficiently state a claim for tortious interference with a contract. Accordingly, the Court will grant this portion of Defendants' motion and dismiss without prejudice Plaintiff's tortious interference with a contract claim.

### C.   TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Defendants next argue that Plaintiff fails to state a claim based on tortious interference with a prospective economic advantage because it does not allege any damages, prospective economic advantage, or that Defendants acted with malice. (*See generally*, Moving Br.)

New Jersey recognizes tortious interference with a prospective economic advantage as separate and distinct from tortious interference with an existing contract. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751–52 (1989). To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must demonstrate (1) some reasonable expectation of economic advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) a reasonable probability that the plaintiff would have obtained the anticipated economic benefit in the absence of interference, and (5) that the interference caused the plaintiff

10

damage. *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751-52 (1989)).

Malice is not used here in its literal sense to mean "ill will;" rather, it means that harm was inflicted intentionally and without justification or excuse. *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199 (App. Div.), *cert. denied*, 141 N.J. 99 (1995). It is determined on an individualized basis, and the standard is flexible, viewing the defendants' actions in the context of the facts presented. *Id.* Often it is stated that the relevant inquiry is whether the conduct was sanctioned by the "rules of the game," because where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury. *Id.* The conduct must be both "injurious and transgressive of generally accepted standards of common morality or of law." *Harper-Lawrence, Inc. v. United Merchants and Mfrs., Inc.*, 261 N.J. Super. 554, 568 (App. Div.), *cert. denied*, 134 N.J. 478 (1993) (quoting *Di Cristofaro v. Laurel Grove Mem'l Park*, 43 N.J. Super. 244, 255 (App. Div. 1957)). The line is clearly drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage. *Ideal Dairy Farms, Inc.*, 282 N.J. Super. at 205.

Here, the Amended Complaint adequately pleads that Plaintiff has a protectable economic interest in its relationships with its customers, manufacturers, and vendors. (Am. Compl. ¶ 65.) Unfortunately, the Amended Complaint only baldly alleges that Olympus acted with malice when it hired Sandell, and alleges no facts in support of its assertion. Moreover, the Complaint pleads no facts articulating how Olympus's hiring of Sandell somehow crossed the line of fraudulence, dishonesty, or illegality required by the New Jersey Supreme Court in *Ideal Dairy Farms.* Accordingly, the Court will grant Defendants' motion with respect to the Plaintiff's claim for

11

tortious interference with prospective economic advantage and dismiss that claim without prejudice.

**IV.**    <u>**CONCLUSION**</u>

For the reasons stated above, the Court will DENY Defendants' Motion with respect to Count I of the Amended Complaint and GRANT Defendants' Motion with respect to Counts II and IV of the Amended Complaint.  An appropriate Order will follow.


Date: **November 22, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
